**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MISSOURI**
**EASTERN DIVISION**

| | | |
|---|---|---|
| DAMIEN RAY, | ) | |
| | ) | |
| Petitioner, | ) | |
| | ) | |
| v. | ) | Case No. 4:12-CV-2400 NAB |
| | ) | |
| IAN WALLACE, | ) | |
| | ) | |
| Respondent | ) | |

## MEMORANDUM AND ORDER

This matter is before the Court on Petitioner Damien Ray's (Ray) Petition for Writ of Habeas Corpus pursuant to 28 U.S.C. § 2254. [Doc. 5.] Respondent Ian Wallace filed a response. [Doc. 12.] Ray filed a Reply Memorandum. [Doc. 18.] The parties have consented to the jurisdiction of the undersigned United States Magistrate Judge pursuant to 28 U.S.C. § 636(c)(1). [Doc. 15.] For the reasons set forth below, Ray's Petition for Writ of Habeas Corpus will be denied.

## I.    Background

Ray was convicted of robbery in the first degree and armed criminal action after a jury trial. The evidence presented in the light most favorable to the jury verdict is as follows[1]: At approximately 1:30 a.m. on July 1, 2007, Lester Hash patronized a Shell gas station and convenience store where he noticed Ray sitting in the back seat of a white sports utility vehicle (SUV) looking at him as he walked into the store. While Hash was inside the store, he looked at the SUV again. Ray was still looking at Hash and talking to the other people inside the SUV.

---

[1] These facts are taken directly from the Supplemental Memorandum accompanying the Missouri Court of Appeals' decision in Watkins' direct appeal. *See* Resp't Ex. E. A state court's determination of a factual issue made by a State court shall be presumed to be correct. 28 U.S.C. § 2254(e).

Hash again glanced at the SUV while he was in line, and saw that Ray was still looking at him. When Hash exited the store, Ray began to talk to him as he walked to his truck. After Hash got into his truck, he attempted to close the door, but Ray stepped in between the door and truck and held the door open. Ray offered to sell Hash drugs, which Hash declined. Hash tried to close the door when Ray pulled out a gun. Ray jammed the gun into Hash's stomach, telling Hash to give him $100.00 or Ray would fire the gun. Hash gave Ray all the money he had, which was about $120.00. Ray then got back into the SUV.

Hash called the police. Upon Officer Sean Lipina's arrival, Hash described the SUV to the officer as a white Ford Expedition with license plate number 411-RKF. Hash described Ray as being a black male; approximately five foot ten, one hundred and sixty to one hundred and seventy pounds; and wearing a blue shirt, black pants, and tattoos on his left forearm. About three hours later, Sergeant Bryan McGynn stopped a white SUV matching the description of the one Ray had occupied at the time of the robbery. Officer Lipina determined that Ray matched Hash's physical description of the man who robbed him, and that the vehicle was also an exact match for the description given by Hash. That same day, Hash viewed a physical line-up, which consisted of Ray and three other similar looking inmates. Hash identified Ray as the robber, claiming he was one hundred percent certain of the identification. Ray was charged with first-degree robbery and armed criminal action. (Resp't Ex. B at 15-16.) A jury returned a guilty verdict on both counts. (Resp't Ex. B at 54, 56.) Ray received two 20 year concurrent sentences for both convictions. (Resp't Ex. B at 73-76.)

## II.    Standard of Review

"The writ of habeas corpus stands as a safeguard against imprisonment of those held in violation of the law. Judges must be vigilant and independent in reviewing petitions for the writ,

a commitment that entails substantial judicial resources." *Harrington v. Richter*, 562 U.S. 86, 91 (2011). "In general, if a convicted state criminal defendant can show a federal habeas court that his conviction rests upon a violation of the Federal Constitution, he may well obtain a writ of habeas corpus that requires a new trial, a new sentence, or release." *Trevino v. Thaler*, 133 S.Ct. 1911, 1917 (2013). The Anti-Terrorism and Effective Death Penalty Act of 1996, 28 U.S.C. § 2254 (AEDPA) applies to all petitions for habeas relief filed by state prisoners after this statute's effective date of April 24, 1996. *Lindh v. Murphy*, 521 U.S. 320, 326-29 (1997). In conducting habeas review pursuant to 28 U.S.C. § 2254, a federal court is limited to deciding whether a claim that was adjudicated on the merits in state court proceedings (1) resulted in a decision that is contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court, or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding. 28 U.S.C. § 2254(d). A determination of a factual issue made by a state court is presumed to be correct unless the petitioner successfully rebuts the presumption of correctness by clear and convincing evidence. 28 U.S.C. § 2254(e)(1).

For purposes of § 2254(d)(1), the phrase "clearly established federal law refers to the holdings, as opposed to the dicta, of [the Supreme] Court's decisions as of the time of the relevant state court decision." *Lockyer v. Andrade*, 538 U.S. 63, 71 (2003). "In other words, clearly established federal law under § 2254(d)(1) is the governing legal principle or principles set forth by the Supreme Court at the time the state court renders its decision." *Id.* at 72. To obtain habeas relief, a habeas petitioner must be able to point to the Supreme Court precedent which he thinks the state courts acted contrary to or unreasonably applied. *Buchheit v. Norris*, 459 F.3d 849, 853 (8th Cir. 2006).

A state court's decision is "contrary to" clearly established Supreme Court precedent "if the state court either 'applies a rule that contradicts the governing law set forth in [Supreme Court] cases' or 'confronts a set of facts that are materially indistinguishable from a decision of [the] Court and nevertheless arrives at a result different from [the] precedent.'" *Penry v. Johnson*, 532 U.S. 782, 792 (2001) (citing *Williams v. Taylor*, 529 U.S. 362, 405–406 (2000)). A state court decision is an unreasonable application of clearly established Supreme Court precedent if it correctly identifies the governing legal rule but applies it unreasonably to the facts of a particular prisoner's case. *Id.* (citing *Williams*, 529 U.S. at 407–408). "A federal habeas court making the unreasonable application inquiry should ask whether the state court's application of clearly established federal law was objectively unreasonable." *Penry*, 532 U.S. at 793. "A state court decision involves 'an unreasonable determination of the facts in light of the evidence presented in the state court proceedings,' 28 U.S.C. § 2254(d)(2), only if it is shown that the state court's presumptively correct factual findings do not enjoy support in the record." *Evanstad v. Carlson*, 470 F.3d 777, 782 (8th Cir. 2006). A "readiness to attribute error is inconsistent with the presumption that state courts know and follow the law." *Woodford v. Visciotti*, 537 U.S. 19, 24 (2002). AEDPA's highly deferential standard demands that state court decisions be given the benefit of the doubt. *Id.*

## III. Discussion

Ray presents five grounds for relief.[2] Ray alleges three trial court errors. First, he states that the trial court erred in denying his motion to suppress Hash's out-of-court and in-court identifications. Ray also contends that the Rule 29.15 post-conviction motion court erred in appointing independent counsel for three potential witnesses, because it violated Ray's due process right and his right to present a defense at his post-conviction evidentiary hearing. Ray

---

[2] Ray lists six grounds, but grounds two and six will be considered together.

also asserts that the Rule 29.15 post-conviction motion court should have granted immunity to the three witnesses so that they would testify at the post-conviction evidentiary hearing.

Ray also asserts two ineffective assistance of counsel claims. Ray asserts that trial counsel was ineffective for failing to call three witnesses and failing to object to and preserve for review the use of peremptory strikes against three female venirepersons.

## A.    Trial Court Error (Grounds 1, 4, and 5)

### 1.    Failure to Suppress Out of Court Identifications (Ground 1)

Petitioner's first ground for relief states that the trial court erred in overruling his motion to suppress out-of-court identifications, because the identifications were unduly suggestive, created a substantial likelihood of misidentification, were inherently unreliable, and violated his rights. The Supreme Court has recognized, "state and federal statutes and rules ordinarily govern the admissibility of evidence, and juries are assigned the task of determining the reliability of the evidence presented at trial." *Perry v. New Hampshire*, 132 S.Ct. 716, 723 (2012). There is a "due process check on the admission of eyewitness identification, applicable where police have arranged suggestive circumstances leading the witness to identify a particular person as the perpetrator of a crime." *Perry*, 132 S.Ct. at 720. Reliability is the "linchpin" in determining the admissibility of identification testimony. *Manson v. Brathwaite*, 432 U.S. 98, 114 (1977). The factors to be considered in determining admissibility are the following: (1) the opportunity of the witness to view the criminal at the time of the crime, (2) the witness' degree of attention, (3) the accuracy of his prior description of the criminal, (4) the level of certainty demonstrated at the confrontation, and (5) the time between the crime and the confrontation. *Id.* "Against these factors is to be weighed the corrupting effect of the suggestive identification itself." *Id.* "The existence of each factor is a factual determination to be made by the state court … and is entitled

to the requisite presumption of correctness." *Palmer v. Clarke*, 408 F.3d 423, 435-36 (8th Cir. 2005). "The admissibility of evidence in a state trial is a matter of state law," and habeas relief will be granted only if the "state court's evidentiary ruling infringes upon a specific constitutional protection or is so prejudicial that it amounts to a denial of due process." *Palmer*, 408 F.3d at 436.

In this case, Ray filed a motion to suppress identification. (Resp't Ex. B. at 33-34.) The trial court took the motion with the case. Hash testified that when he was robbed, he noticed that the robber had tattoos on his arm. (Resp't Ex. A at 179.) After Hash left St. Louis, he received a phone call from police. The police informed Hash that they had stopped the white SUV and there was a gentleman matching the description of the robber and he needed to come identify him. (Resp't Ex. A at 186, 205.) Hash returned to St. Louis and viewed a physical line-up. (Resp't Ex. A at 186-89, 206-8) Hash selected Ray as the person who robbed him and stated he was one hundred percent positive of the identification. (Resp't Ex. A at 186-89.)

Ray contends that the trial court erred in allowing Hash's out of court and in court identifications, because Officer Lipina gave Hash the impression that the robber was present in the physical line-up when Hash had little to no independent basis for the identification. The Missouri Court of Appeals denied Ray's appeal, stating that under state law, identifications are not impermissibly suggestive because a witness knows a lineup includes a suspect whom the police believe the witness might identify. (Resp't Ex. E at 5-6.) The court of appeals found that it is implicit that the line-up may include the person police suspect as the perpetrator of the crime. The state court also found that only having two men in the lineup with tattoos was not unduly suggestive, because courts only require reasonable efforts by police to find physically similar participants for a photographic lineup. (Resp't Ex. E at 6.)

Based on a review of the evidence regarding the identification, the Court will deny relief on this claim. "A lineup is not made unnecessarily suggestive due to the number of non-suspects in a lineup or because the non-suspects are different from a suspect in physical appearance or attire." *Collins v. Bowersox*, No. 4:04-CV-1194 RWS, 2007 WL 2231040 at *10 (E.D. Mo. Jul. 31, 2007). "A police station is not a theatrical casting office, and all that is required is that a reasonable effort is made to find physically similar participants." *Id.* Ray has failed to provide evidence that the non-suspects in the line-up where so physically dissimilar that the physical line-up was unduly suggestive.

Even assuming that the line-up was unduly suggestive, the physical lineup identification did not result in a substantial likelihood of misidentification. *U.S. v. Johnson*, 56 F.3d 947, 954 (8th Cir. 1995) (even assuming procedure was impermissibly suggestive because petitioner was the only person in lineup in jail uniform; based on totality of circumstances, lineup procedures did not result in substantial likelihood of misrepresentation). In this case, several factors lend to the reliability of the lineup identification, which is the linchpin in determining admissibility. First, Hash observed Ray at a very close distance during the robbery. Second, Hash was able to provide accurate details about Ray's clothing, observed that Ray had tattoos, and gave the police a correct description of the SUV's license plate number. Third, Hash was very confident in his identification. Finally, the time between the robbery and the identification was a few hours. Officer Lipina's indication that Hash had selected the suspect had no bearing on Hash's identification of Ray, because Lipina's affirmation did not occur until after Hash had selected Ray as the person who robbed him.

Based on the foregoing, the Court finds that the state appellate court's findings and conclusions were not contrary to, nor do they involve an unreasonable application of clearly

established federal law as determined by the Supreme Court of the United States, nor did they result in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceedings regarding the physical line-up and subsequent identification of Ray at trial.

### 2. Grounds 4 and 5

Ray asserts two claims regarding his Rule 29.15 post-conviction proceedings. He contends that the trial court erred in appointing counsel to advise his three witnesses and the court should have granted "use immunity" to the witnesses after they asserted their Fifth Amendment right not to testify. Respondent contends that Ray's claims are not cognizable on federal review.

Ray presented these claims to the Missouri Court of Appeals in his pro se and amended appeals of the denial of his Rule 29.15 motion. The appellate court declined to review the claims, because the claims were not raised in the post-conviction motion presented to the Rule 29.15 motion court. "An infirmity in state post-conviction proceedings does not raise a constitutional issue cognizable in a federal habeas petition." *Gee v. Groose*, 110 F.3d 1346, 1351-52 (8th Cir. 1997) (quoting *Jolly v. Gammon*, 28 F.3d 51, 54 (8th Cir. 1994)). There is no constitutional right to state post-conviction proceedings, as such irregularities in these proceedings do not rise to the level of a constitutional violation. *Pennsylvania v. Finley*, 481 U.S. 551, 557 (1987); *Williams v. Missouri*, 640 F.2d 140, 143-44 (8th Cir. 1981). Therefore, Ray's claims in Grounds 4 and 5 are not cognizable in this federal habeas petition. Even if the Court could review Ray's claims, these claims lack merit as discussed below.

### a. Appointment of Counsel for Witnesses (Ground 4)

Ray contends that the trial court erred in appointing counsel for three witnesses, Anthony Doll, Jarvis Smith, and Emmanuel Harrison at his Rule 29.15 post-conviction evidentiary hearing. Doll, Smith, and Harrison were allegedly in the car with Ray at the time of the robbery. Smith is Ray's brother. Ray's initial post-conviction counsel subpoenaed the three witnesses to testify at the Rule 29.15 evidentiary hearing. Although it is not in the transcript of the Rule 29.15 evidentiary hearing, the state's attorney notified the court of possible self-incrimination by the three witnesses who Ray testified were in the SUV with him on the day of the robbery. The Rule 29.15 motion court appointed one attorney who spoke to all three witnesses. The witnesses' appointed attorney represented to the court that Doll, Smith, and Harrison wished to assert their Fifth Amendment right against self-incrimination. The state's attorney stipulated, at post-conviction counsel's suggestion, that all three witnesses would assert their rights under the Fifth Amendment. Without further inquiry, the post-conviction motion court released the witnesses from testifying.

Ray contends that the state committed misconduct in raising the issue of potential self-incrimination. Ray also contends that appointing counsel for these three witnesses caused a manifest injustice and miscarriage of justice, because the appointment of counsel denied his rights to due process of law and to present a defense. In his habeas petition, Ray has included an affidavit from Jarvis Smith stating that appointed counsel told him that if he testified, he would be "falsely accused as an accessory to the crime and be placed behind bars with Damien T. Ray." [Doc. 5 at 15-16.]

"The Self-Incrimination Clause of the Fifth Amendment guarantees that no person shall be compelled in any criminal case to be a witness against himself." *Withrow v. Williams*, 507 U.S. 680, 688 (1993). "Nothing in the Fifth Amendment, or in any other constitutional provision, provides a means for overcoming this privilege once a potential witness has invoked it." *U.S. v. Blaylock*, 421 F.3d 758, 770 (8th Cir. 2005) (citing *United States v. Moussaoui*, 382 F.3d 453, 466 (4th Cir. 2003)). Ray's Sixth Amendment right to compulsory process does not include the right to compel any of the witnesses to waive his or her Fifth Amendment privilege against self-incrimination. *Blaylock*, 421 F.3d at 770. "[W]hen a defendant's Sixth Amendment rights and a witness's Fifth Amendment rights collide, an accused's right to compulsory process must give way to the witness's Fifth Amendment privilege not to give testimony that would tend to incriminate him." *Culkin v. Purkett*, 45 F.3d 1229, 1233 (8th Cir. 1995).

In this case, Ray has not alleged that the trial court or the state's attorney threatened or intimidated Doll, Smith, or Harrison, which would be clearly inappropriate. Ray alleges that the state's attorney should not have raised the issue of potential self-incrimination and the court should not have appointed counsel to advise the witnesses of their Fifth Amendment right not to incriminate themselves. Missouri Supreme Court Rule 4.3 states that a lawyer "shall not give advice to an unrepresented person, other than the advice to secure counsel." The Missouri Supreme Court has also found that prosecutors have a duty to request the court advise a witness of his right against self-incrimination. *See State v. Grays*, 856 S.W.2d 87, 91 (Mo. Ct. App. 1993) (citing *State v. Miller*, 485 S.W.2d 435, 441 (Mo. 1972) (Missouri Supreme Court found prosecutorial duty to ensure witness was aware of his rights). "Although a witness may freely invoke his privilege against self-incrimination even at the expense of the defendant's right to present a defense, the government cannot substantially interfere with a defense witness's

decision to testify." *United States. v. Pablo*, 696 F.3d 1280, 1295 (10th Cir. 2012) (citing *United States v. Serrano*, 406 F.3d 1208, 1214 (10th Cir. 2005)). "Whether substantial government interference occurred is a factual determination." *United States v. True*, 179 F.3d 1087, 1090 (8th Cir. 1999).

Ray has not provided any legal authority holding that a state's attorney cannot inform the court that an unrepresented witness's testimony may implicate the witness's Fifth Amendment right against self-incrimination. To the contrary, the state's attorney had an obligation to do so. As stated above, Ray's Sixth Amendment right to present his defense must yield to another's Fifth Amendment right against self-incrimination. No federal constitutional violation is found based solely on a state's attorney informing the court that a witness's testimony may implicate the witness's Fifth Amendment rights.

Next, the trial court's appointment of counsel cannot be considered improper. In *Webb v. Texas*, the Supreme Court held that a defendant's Sixth Amendment rights were violated when a trial judge gave a lengthy admonition to a defense witness about lying and perjury, but had failed to provide the same admonition to any of the prosecution witnesses. *Webb v. Texas*, 409 U.S. 95, 97 (1972). In *Webb*, the trial judge "implied that he expected the witness to lie, and went on to assure him that if he lied, he would be prosecuted and probably convicted for perjury, the sentence for that conviction would be added on to his present sentence, and that the result would be to impair his chances for parole." *Id.* Not surprisingly, the witness was so intimidated that he refused to testify. *Id.* The Supreme Court held that the trial judge's "threatening remarks," effectively "drove that witness off the stand." *Id.* No such conduct occurred in this case. The record does not even indicate that the judge spoke directly to the witnesses. Ray has not alleged any federal constitutional violation in the Rule 29.15 post-conviction motion court's appointment

of counsel for his witnesses. *See Graham v. Symmes*, No. 10-2404 JNE/JJK, 2011 WL 2693659 at *7-14 (D. Minn. May 19, 2011) (decision by trial court not to compel witnesses or their attorneys to explain how their testimony would incriminate the witness did not violate petitioner's right to present a defense); *Taylor v. Cain*, 649 F.Supp.2d 460, 482-84 (E.D. La. 2009) (the prosecutor's actions of informing witnesses of Fifth Amendment implication in testimony and court's appointment of counsel to represent them was proper).

Finally, the Smith's affidavit does not affect the Court's findings. Smith's affidavit alleges no wrongdoing on the part of the state or the Court. Smith's affidavit asserts that appointed counsel advised him not to testify, because he would be "falsely" accused as an accessory to the crime and placed behind bars. [Doc. 5 at 15-16.] Notwithstanding Smith's characterization of appointed counsel's advice, this affidavit does not support a claim against the state or the court that would be reviewable in Ray's habeas petition.

### b.     Failure to Offer Witnesses Immunity (Ground 5)

Ray also asserts that the trial court should have granted Doll, Smith, or Harrison "use immunity" so that they could testify on his behalf. In Missouri, neither prosecutors nor judges have inherent power to grant immunity. *State v. Culkin*, 791 S.W.2d 803, 815 (Mo. Ct. App. 1990). The power to grant immunity comes from the legislature. *Id.* Missouri statutory law allows a judge to compel a witness to testify and produce evidence only upon the approval of a verified application for witness immunity from the prosecuting attorney. Mo. Rev. Stat. § 491.205.2. Because the trial court cannot *sua sponte* grant immunity to a witness or require the prosecuting attorney to grant immunity, Ray's claim in ground 5 fails as a matter of law.

Based on the foregoing, the Court finds that grounds 4 and 5 are not cognizable on federal habeas review and the state appellate court's findings and conclusions were not contrary

to, nor do they involve an unreasonable application of clearly established federal law as determined by the Supreme Court of the United States, nor did they result in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceedings regarding Ray's Sixth Amendment rights. Even if the Court could review these claims, the claims lack merit. Therefore, the Court will deny relief on grounds 4 and 5.

**B.      Ineffective Assistance of Counsel Claims (Grounds 2, 3, and 6)**

Ray presents two ineffective assistance of counsel claims. Ray asserts that trial counsel was ineffective for failing to call three witnesses who were with him at the gas station and failed to preserve for appellate review the prosecutor's discriminatory use of peremptory strikes based on gender. "The Sixth Amendment recognizes the right to the assistance of counsel because it envisions counsel's playing a role that is critical to the ability of the adversarial system to produce just results." *Strickland v. Washington*, 466 U.S. 668, 687-88 (1984). "An accused is entitled to be assisted by an attorney, whether retained or appointed who plays the role necessary to ensure that the trial is fair." *Id.* To succeed in a claim "that counsel's assistance was so defective as to require reversal of a conviction," a petitioner must establish (1) that the trial counsel's performance fell below an objective standard of reasonableness and (2) that this deficient performance prejudiced the Petitioner's defense. *Strickland*, 466 U.S. at 687-88.

The "performance" component of *Strickland* requires a showing that "counsel's representation fell below an objective standard of reasonableness." *Strickland*, 466 U.S. at 688. To satisfy this prong, a petitioner must first identify the specific acts or omissions of counsel that are alleged not to have been the result of reasonable professional judgment. *Id.* at 690. The court must then examine the totality of the circumstances in order to determine whether "the identified acts or omissions were outside the wide range of professionally competent assistance."

*Id.*  In making this determination, the court should recognize that trial counsel is "strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment." *Id.*  "Miscues and omissions are inevitable in any case and there is no such thing as a perfect trial." *Medearis v. U.S.*, 469 F.Supp.779, 785 (D.S.D. 2006).

To satisfy the "prejudice" component of *Strickland*, a petitioner "must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694.  Such "reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.*  In determining whether prejudice exists, "a court hearing an ineffectiveness claim must consider the totality of the evidence before the judge or jury." *Id.* at 695.  Further, the court "should presume, absent challenge to the judgment on grounds of evidentiary insufficiency, that the judge and jury acted according to the law." *Id.* at 694.

It is important to note that "there is no reason for a court deciding an ineffective assistance claim to approach the [two-pronged] inquiry in [a pre-determined] order or even to address both components of the inquiry if the defendant makes an insufficient showing on one." *Strickland*, 466 U.S. at 697.  It is unnecessary, therefore, to prove that counsel's performance fell below an objective standard of reasonableness before determining the presence or absence of resulting prejudice.

### 1.	Failure to Call Witnesses (Grounds 2 and 6)

In the first claim of ineffective assistance of counsel, Ray asserts that trial counsel failed to investigate and call as witnesses Doll, Smith, and Harrison.  Ray contends that their testimony would have provided a viable defense that he did not commit the charged offenses and but for

trial counsel's ineffectiveness, there was a reasonable probability that the trial result would have been different.

At his sentencing, Ray testified that he gave trial counsel the names of all of the witnesses that could help him at trial and named two witnesses- Doll and Harrison. (Resp't Ex. A at 320-21.) Trial counsel told the court that his investigator made every effort to try and contact the witnesses and discuss the case with them. (Resp't Ex. A at 323-24.) At the Rule 29.15 post-conviction hearing, Ray and his trial counsel testified. Ray testified that he told his counsel that he wanted Doll, Smith, and Harrison to testify on his behalf at trial, because they were with him on the night of the robbery. (Resp't Ex. F at 7.) Ray testified that his trial counsel told him that Doll was not credible, because he would testify that Ray was wearing the same color T-shirt that the victim stated that he was wearing. (Resp't Ex. F at 8-9.) Ray also testified that he gave his counsel the addresses and phone numbers for Smith and Harrison, but counsel informed him that his caseload was overloaded so the investigator couldn't get a hold of them. (Resp't Ex. F at 9-10.) Ray's trial counsel testified that his investigator had a telephone interview with Harrison and maybe Smith, but he did not call them as witnesses. (Resp't Ex. F at 19-21.)

The Rule 29.15 motion court denied Ray's Rule 29.15 post-conviction motion and the Missouri Court of Appeals affirmed. (Resp't Ex. G at 28-39, J.) The court of appeals stated that Ray failed to prove that trial counsel's decision to forgo calling Doll, Smith, and Harrison did not conform to the degree of skill and diligence of a reasonably competent attorney. (Resp't Ex. J at 5.) The court of appeals noted that Ray did not meet his burden to show that the witnesses would have testified at trial, especially in light of the fact that all three witnesses invoked their Fifth Amendment rights and did not testify at the Rule 29.15 hearing. (Ex. J. at 5.) The court of

appeals also noted that Ray could not prove that the witnesses would have provided a viable defense, because Ray testified that he was at the gas station at the time of the robbery and offered Hash drugs. Hash testified that Ray, the person who offered him drugs, then robbed him. Hash also provided the police with the correct license plate number of the SUV and identified Ray in a line-up.

Trial counsel's failure to call witnesses is presumed to be reasonable trial strategy. "Decisions relating to witness selection are normally left to counsel's judgment and this judgment [should not] be second guessed on hindsight." *Williams v. Armontrout*, 912 F.2d 924, 934 (8th Cir. 1990). An attorney's decision not to interview or call a particular witness must be viewed from the perspective of counsel at the time the decision was made. *U.S. v. Williams*, 562 F.3d 938, 941 (8th Cir. 2009). "To establish prejudice from counsel's failure to investigate a potential witness, a petitioner must show that the witness would have testified and that their testimony probably would have changed the outcome of the trial." *Siers v. Weber*, 259 F.3d 969, 974 (8th Cir. 2001). "In conducting this analysis, [the Court considers]: (1) the credibility of all witnesses, including the likely impeachment of the uncalled defense witnesses; (2) the interplay of the uncalled witnesses with the actual defense witnesses called; and (3) the strength of the evidence actually presented by the prosecution." *Id.* There is no prejudice if, factoring in the uncalled witnesses, the government's case remains overwhelming. *Armstrong v. Kemna*, 590 F.3d 592, 605 (8th Cir. 2010).

The Court finds that the state court's decision findings and conclusions were not contrary to, nor do they involve an unreasonable application of clearly established federal law as determined by the Supreme Court of the United States, nor did they result in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the state

court proceedings regarding the failure to call witnesses. Trial counsel's decision not to call witnesses who could also be implicated in the robbery was reasonable trial strategy. Ray cannot show that the witnesses would have waived their Fifth Amendment rights and testified on his behalf at trial. The witnesses all exercised their right not to testify on his behalf at the Rule 29.15 hearing. Further, Ray cannot show prejudice. Even if the witnesses testified that Ray did not rob Hash, the government's case is overwhelming. Ray testified that he was at the gas station at the time of the robbery and offered Hash drugs. A few hours after the robbery, Hash identified Ray as the robber and accurately identified the car Ray was riding in during the robbery. Therefore, the Court will deny relief on this claim.

### 2.      Failure to Object and Preserve Issue for Appeal (Ground 3)

Finally, Ray states that trial counsel was ineffective for his failure to object to and preserve for appeal the prosecution's discriminatory peremptory strikes based on gender. The Respondent contends that this claim is procedurally defaulted and lacks merit.

"Failure to raise a claim on appeal reduces the finality of appellate proceedings, deprives the appellate court of an opportunity to review trial error, and undercuts the State's ability to enforce its procedural rules." *Murray v. Carrier,* 477 U.S. 478, 491 (1986). "In all cases in which a state prisoner has defaulted his federal claims in state court pursuant to an independent and adequate state procedural rule, federal habeas review is barred." *Coleman v. Thompson,* 501 U.S. 722, 750 (1991). To overcome the default, a defendant must demonstrate either cause and actual prejudice as a result of the alleged violation of federal law, or demonstrate that a failure to consider the claims will result in a fundamental miscarriage of justice. *Coleman*, 501 U.S. 722 at 750.

To show cause for the default, defendant must demonstrate that some objective factor external to the defense impeded counsel's efforts to comply with the State's procedural rule. *Murray,* 477 U.S. at 488. For example, a defendant could demonstrate that the factual or legal basis for a claim was not reasonably available to counsel or some interference by officials made compliance impracticable. *Id* at 488. While ineffective assistance of counsel constitutes cause for a procedural default, the exhaustion doctrine generally requires that an ineffective assistance claim be presented to the state courts as an independent claim before it may be used to establish cause of a procedural default in federal habeas proceedings. *Id.* at 489. An ineffective assistance of counsel claim asserted as cause for the procedural default of another claim can itself be procedurally defaulted. *Edwards v. Carpenter,* 529 U.S. 446, 453 (2000). This procedural default may be excused if the prisoner can then satisfy the cause-and-prejudice standard with respect to that claim. *Id.*

Section 2254(i) provides that "the ineffectiveness or incompetence of counsel during Federal or State collateral post-conviction proceedings shall not be a ground for relief in a proceeding arising under section 2254." 28 U.S.C. § 2254(i). The Supreme Court has recognized a limited exception to this rule. In *Martinez v. Ryan*, the Supreme Court held:

> Where under state law, claims of ineffective assistance of trial counsel must be raised in an initial-review collateral proceeding, a procedural default will not bar a federal habeas court from hearing a substantial claim of ineffective assistance at trial, if in the initial review collateral proceeding, there was no counsel or counsel in that proceeding was ineffective.

*Martinez v. Ryan,* 132 S.Ct. 1309, 1320 (2012). The Eighth Circuit has held that *Martinez* does not stand for the proposition that the failure to preserve claims on appeal from a post-conviction proceeding can constitute cause. *Arnold v. Dormire*, 675 F.3d 1082, 1087 (8th Cir. 2012) (citing

*Martinez*, 132 S.Ct. at 1320) (holding does not concern attorney errors in other kinds of proceedings, including appeals from initial-review collateral proceedings).

In this case, Ray's discriminatory peremptory strikes claim is defaulted. At the outset, the venirepersons mentioned by Ray were stricken for cause, the strikes were not peremptory strikes. Ray's counsel did not object to the strikes for cause at trial. Moreover, Ray did not present a claim of ineffective assistance of trial counsel for failure to object to the prosecutor's strikes for cause in the appeal of the denial of his Rule 29.15 post-conviction motion.

Further, the undersigned finds that Ray has not established cause and prejudice to excuse the default. Ray states that he received ineffective assistance of initial post-conviction counsel, which should excuse default of his claims. But, initial post-conviction counsel included these claims in the amended Rule 29.15 motion[3]. (Resp't Ex. G at 23). Evidence regarding the jury strikes was also presented at the Rule 29.15 evidentiary hearing. (Resp't Ex. F at 9-13, 21-25.) Ray's appellate post-conviction counsel did not include the claim in the post-conviction appeal to the Missouri Court of Appeals. The failure to preserve claims on appeal from a post-conviction proceeding cannot constitute cause for default. *See Arnold v. Dormire*, 675 F.3d 1082, 1087 (8th Cir. 2012) (citing *Martinez*, 132 S.Ct. at 1320). Therefore, Ray's default cannot be excused.

Even if Ray's claims were not defaulted, the undersigned finds that Ray's claim lacks merit. "[The] proper test for exclusion of a juror for cause is whether the juror's views would prevent or substantially impair the performance of his duties as a juror in accordance with his instructions and his oath." *Sweet v. Delo*, 125 F.3d 1144, 1156 (8th Cir. 1997) (citing

---

[3] Initial post-conviction counsel incorporated Ray's original 29.15 motion including his claims regarding the jury strikes into the amended Rule 29.15 motion. (Resp't Ex. G at 23.)

*Wainwright v. Witt*, 469 U.S. 412, 424 (1985)).  Deference must be given to the trial judge who sees and hears the juror.  *Wainwright*, 469 U.S. at 426.

Ray claims that three venirepersons Kimberly Wilkens, Melissa Cook, and Sara Martin were stricken based solely on gender.  During jury selection, Wilkens stated that due to her cousin's conviction, she could not be fair to both sides, she would follow her own heart instead of the court's instructions, including regarding the elements of the offense.  (Tr. 16-18, 29-30, 37, 40.)  The state struck Wilkens for cause and Ray's counsel did not object.  (Resp't Ex. at 130.)  At the Rule 29.15 evidentiary hearing, trial counsel testified that the state had grounds to strike Wilkins for cause.  (Resp't Ex. F at 23.)  During jury selection, Cook stated that she would not want to decide a case "based off of testimony."  (Resp't Ex. A at 41-42.)  The state struck Cook for cause and Ray's counsel did not object.  (Resp't Ex. A at 130.)  At the Rule 29.15 evidentiary hearing, trial counsel testified that the state had grounds to strike Cook for cause.  (Resp't Ex. F at 23-24.)  During jury selection, Martin stated that she would have difficulty assessing conflicting information and determining credibility, she would hold the state to a lesser standard, and that she could not be fair to both sides due to the type of charges involved.  (Tr. 50-52, 63, 99.)  The state struck Martin for cause and Ray's counsel did not object.  (Resp't Ex. at 130.)  At the Rule 29.15 evidentiary hearing, trial counsel testified that the state had grounds to strike Martin for cause.  (Resp't Ex. F at 24-25.)  Based on the foregoing, the Court finds that Ray has not shown any constitutional error in the strikes for cause.  Further, Ray has not demonstrated that he was prejudiced by the strikes of these three venirepersons.  Therefore, the Court will deny relief on ground 3.

## IV.     Conclusion

Based on the foregoing, the Court finds that Ray's request for relief pursuant to 28 U.S.C. § 2254 should be denied.   Further, because Ray has made no showing of a denial of a constitutional right, the Court will not issue a certificate of appealability.   *See* 28 U.S.C. § 2253(c)(2); *Tiedeman v. Benson*, 122 F.3d 518, 522 (8th Cir. 1997).

Accordingly,

**IT IS HEREBY ORDERED** that the Petition for Writ of Habeas Corpus pursuant to 28 U.S.C. § 2254 is **DENIED**.  [Docs. 1 and 5[4].]

**IT IS FURTHER ORDERED** that a separate judgment will be entered this same date.

**IT IS FURTHER ORDERED** that, for the reasons stated herein, any motion by Damien Ray for a Certificate of Appealability will be **DENIED**.

Dated this 23rd day of March, 2016.


     /s/ Nannette A. Baker
NANNETTE A. BAKER
UNITED STATES MAGISTRATE JUDGE

---

[4] There are two Petitions, because Ray's original Petition [Doc. 1] was not signed.  The Court ordered Ray to submit a signed copy of the Petition. [Doc. 3.]  The signed copy of the Petition is Document 5.